## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| **Nancy Christine Boone,** | **Case No. 1:21CV1453** |
| **Plaintiff,** | |
| -vs- | **JUDGE PAMELA A. BARKER** |
| | **Magistrate Judge Jennifer Dowdell Armstrong** |
| **Kilolo Kijakazi,** **Acting Commissioner of Social Security** | |
| **Defendants.** | **MEMORANDUM OPINION AND ORDER** |

This matter is before the Court on the Objections of Plaintiff Nancy Christine Boone ("Plaintiff" or "Boone") to the Report and Recommendation of Magistrate Judge Jennifer Dowdell Armstrong regarding Plaintiff's request for judicial review of Defendant Commissioner of the Social Security Administration's ("Defendant" or "Commissioner") denial of her applications for Period of Disaiblity ("POD"), Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act.  (Doc. No. 13.)  For the following reasons, Plaintiff's Objections are OVERRULED, the Report & Recommendation ("R&R") is ACCEPTED, and the Commissioner's decision is AFFIRMED.

## I.    Background

In January 2020, Boone filed her applications for POD, DIB and SSI**,** alleging a disability onset date of November 21, 2018.  (Doc. No.  5 (Transcript ["Tr."]) at 175, 179.)  The applications were denied initially and upon reconsideration, and Boone requested a hearing before an administrative law judge ("ALJ").  (Tr. 15.)  On August 25, 2020, the ALJ conducted a hearing at

which Boone was represented by counsel and testified.  (Tr. 31-61.)  A vocational expert ("VE") also testified.  (*Id*.)

On September 28, 2020, the ALJ found that Plaintiff was not disabled. (Tr. 15-25.)  The ALJ determined that Boone suffered from the severe impairment of Multiple Sclerosis (with foot drop). (Tr. 18.)  The ALJ found that Boone's impairment did not meet or medically equal the requirements Listing 11.09 and that she retained the residual functional capacity ("RFC") to perform a reduced range of sedentary work.  (Tr. 20-24.)  The ALJ then concluded that Boone could perform her past relevant work as a Telemetry Technician and, therefore, was not disabled. (Tr. 24-25.)  The Appeals Council declined to review the ALJ's decision, and the ALJ's decision became the Commissioner's final decision.  (Tr. 1-6.)

Plaintiff seeks judicial review pursuant to 42 U.S.C. §§ 405(g) and 1383(c). (Doc. No. 1.) The case was referred to the Magistrate Judge pursuant to 28 U.S.C. § 636 and Local Rule 72.2(b)(1) for a Report and Recommendation.  The R&R concludes that the ALJ's decision is supported by substantial evidence and recommends that the decision be affirmed.  (Doc. No. 13.)  On January 27, 2023, Boone filed the following Objection to the R&R:

> I.      The R&R's Finding that Plaintiff Failed to Prove that She Satisfied Each of the Elements of Listing 11.09 is Factually and Legally Incorrect.

(Doc. No. 14.)  The Commissioner filed a Response on February 7, 2023.  (Doc. No. 15.)  The Court has conducted a *de novo* review of the issues raised in Plaintiff's Objections.[1]

---

[1] Boone raised numerous arguments in her initial Brief on the Merits before the Magistrate Judge, but only objected to the R&R's findings as to the one specific issue noted above.  As to those issues addressed in the R&R to which Boone did not object, the Court has reviewed the R&R's findings for clear error and found none.  *See* Fed. R. Civ. P. 72, Advisory Committee Notes (providing that "[w]hen no timely objection is filed, the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.") Accordingly, the Court adopts the R&R with respect to all issues addressed therein to which Boone did not raise a specific objection.

## II.     Relevant Evidence[2]

On September 3, 2019, Boone presented to primary care physician Garren Decaro, M.D., to establish care.  (Tr. 325-328.)  Boone stated that she had been diagnosed with Multiple Sclerosis ("MS") in 2009 but was not currently on therapy for this condition.  (Tr. 325.)  She indicated that her MS was relapsing.  (*Id*.)  Boone also reported suffering from anxiety and insomnia, and was taking Gabapentin, Alprazolam, and prescription strength Ibuprofen.  (Tr. 325, 327.)  Physical examination findings were normal, aside from a rash on Boone's forearms. (*Id*.)  Dr. Decaro diagnosed MS, primary insomnia, idiopathic neuropathy, mild intermittent asthma, and dermatitis.  (*Id*.)  He referred Boone to neurology for her MS.  (Tr. 328.)

On October 18, 2019, Boone presented to neurologist Darshan Mahajan, M.D.  (Tr. 380-384.) Boone reported that she was diagnosed with MS in 2009 and that her last flare up was in 2015.  (Tr. 380.)  She also reported a history of uterine fibroids, heart attack, and mild Crone's disease.  (Tr. 381.)  Boone complained of fatigue, right-sided weakness, and "electrical shocks and burning sensations all over."  (Tr. 380.)  She also stated that she had had two falls in the last week and was using a cane.  (*Id*.)  Boone indicated that the Gabapentin made her sleepy and "did not help her too much."  (*Id*.)

On neurological examination, Dr. Mahajan noted that Boone was awake, alert, and "quite pleasant," with intact speech comprehension and expression, normal pupils and visual fields, normal muscle tone and mass, no fasciculations or involuntary movements, and no pronation or drift.  (Tr. 382.)  He did note mild weakness and decreased sensation in Boone's right lower extremity, although

---

[2] The Court sets forth only that evidence that is necessary to a resolution of Boone's Objection and was cited by the parties in their Briefs on the Merits, Objection, and Response to Objection.

her power and coordination were well maintained in all other muscle groups. (Tr. 382-383.) Boone walked with a cane and could maintain Romberg's position with mild difficulty. (*Id*.) A CT scan of Boone's brain was unremarkable. (Tr. 380.) X-rays of her cervical spine showed a reversible curvature with mild degenerative bone spurring at C5-6-7. (*Id*.) Dr. Mahajan diagnosed MS and repeated falls; and ordered blood work and an MRI of Boone's brain with and without contrast. (Tr. 383-384.)

Boone underwent the brain MRI on November 7, 2019. (Tr. 283-284.) This imaging revealed the following:

1. Focal area of abnormal FLAIR and T2 FLAIR hyperintense signal left frontal lobes white matter, given provided history, likely reflective of a focal area of multiple sclerosis/white matter demyelinating disease. There is no enhancement or restricted diffusion to suggest active demyelinization. No infratentorial lesions are seen.

2. 2 small foci of T2 shine through in the right and the left cerebellum consistent with small bilateral remote cerebellar lacunar infarctions.

3. Small amount of bilateral mastoid air cell effusion with mucosal disease left maxillary sinus. Left maxillary sinus is atrophic compared with the right.

(Tr. 284.)

On November 12, 2019, Boone returned to Dr. Decaro for follow up. (Tr. 303-306.) Dr. Decaro noted that Boone's MRI showed "focal area of WMDD and bilateral remote cerebellar lacunar infarctions." (Tr. 303.) He also noted that Boone had recently undergone a diagnostic colonoscopy, which showed chronic active ilieitis. (*Id.*) Physical examination findings were normal. (Tr. 305.) Dr. Decaro diagnosed mitral valve stenosis, gastroesophageal reflux disease ("GERD"), and colon ulcer. (*Id.*)

Boone returned to Dr. Mahajan on January 8, 2020.  (Tr. 385-388.)  She walked with a cane and reported falling due to her left foot drop, with her last fall in November 2019.  (Tr. 385.)  Boone complained of forgetfulness and "a lot of fatigue."  (*Id*.)  On neurological examination, Dr. Mahajan noted that Boone was awake, alert, and well oriented, with clear speech, intact speech comprehension and expression, clear vision with no diplopia, no facial weakness, normal swallowing, and better strength in the foot extensors.  (Tr. 387.)  Dr. Mahajan indicated that Boone had been started on Mayzent.  (Tr. 385, 387.)

Boone next returned to Dr. Mahajan on August 14, 2020.  (Tr. 607-609.)  She continued to use a cane.  (*Id*.)  Boone reported terrible neck pain extending into her left shoulder and indicated that she had been seen in the emergency room for her neck/shoulder pain earlier that month.  (*Id*.)  An MRI of her cervical spine showed mild degenerative changes at multiple levels, along with slight cervical lordosis at the C5-6 level with dessication at C5-6 and C6-7.  (*Id*.)  Neurologic examination findings were normal, including intact speech comprehension and expression, clear vision, no facial weakness, normal swallowing, and well-maintained strength.  (Tr. 608.)  Dr. Mahajan noted that Boone had a history of falls, with her last one being in June 2020.  (Tr. 609.)  He continued her on Mayzent.  (*Id*.)

On August 13, 2020, Boone presented to pain management specialist Charles Choi, M.D., with complaints of acute left sided neck pain radiating down her left shoulder and arm.  (Tr. 63-68.)  On examination, Boone's cervical range of motion was markedly limited in all perspectives.  (Tr. 63.)  Dr. Choi diagnosed (1) cervical spondylosis without myelopathy, and (2) MS.  (Tr. 67.)  He referred Boone to physical therapy.  (Tr. 63, 67.)

### III.     Standard of Review

Under 28 U.S.C. § 636(b)(1), "[a] judge of the court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). S*ee Powell v. United States*, 37 F.3d 1499 (Table), 1994 WL 532926 at *1 (6th Cir. Sept. 30, 1994) ("Any report and recommendation by a magistrate judge that is dispositive of a claim or defense of a party shall be subject to *de novo* review by the district court in light of specific objections filed by any party.") (citations omitted); *Orr v. Kelly*, 2015 WL 5316216 at *2 (N.D. Ohio Sept. 11, 2015) (citing *Powell,* 1994 WL 532926 at *1). *See also* Fed. R. Civ. P. 72(b)(3). "A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. §636(b)(1).

Under the Social Security Act, a disability renders the claimant unable to engage in substantial gainful activity because of a medically determinable physical or mental impairment that can result in death or that can last at least twelve months. 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505(a). The impairment must prevent the claimant from doing the claimant's previous work, as well as any other work which exists in significant numbers in the region where the individual lives or in several regions of the country. 42 U.S.C. § 423(d)(2)(A). Consideration of disability claims follows a five-step review process.[3] 20 C.F.R. § 404.1520.

---

[3] Under this five step review, the claimant must first demonstrate that she is not currently engaged in "substantial gainful activity" at the time of the disability application. 20 C.F.R. §§ 404.1520(b) and 416.920(b). Second, the claimant must show that she suffers from a "severe impairment" in order to warrant a finding of disability. 20 C.F.R. §§ 404.1520(c) and 416.920(c). A "severe impairment" is one that "significantly limits . . . physical or mental ability to do basic work activities." *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment, or combination of impairments, meets or medically equals a required listing under 20 CFR Part 404, Subpart P, Appendix 1, the claimant is presumed to be disabled regardless of age, education or work experience. *See* 20 C.F.R. §§ 404.1520(d) and 416.920(d). Before considering step four, the ALJ must determine the claimant's residual functional capacity; i.e., the claimant's ability to do physical and mental work activities on a sustained basis despite limitations from her

The Court's review of the Commissioner's decision to deny benefits is limited to determining whether the ALJ applied the correct legal standards and whether the findings are supported by substantial evidence.  42 U.S.C. § 405(g). "Substantial evidence is 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *McGlothin v. Comm'r of Soc. Sec.*, 299 Fed. Appx. 516, 521 (6th Cir. 2008) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal citation omitted)).

If substantial evidence supports the Commissioner's finding that the claimant is not disabled, that finding must be affirmed even if the reviewing court would decide the matter differently.  *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citation omitted).  A reviewing court is not permitted to resolve conflicts in evidence or to decide questions of credibility. *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007) (citation omitted). Moreover, the Commissioner's decision must be affirmed even if substantial evidence also exists in the record to support a finding of disability.  *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citing *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)).

## IV.    Analysis

In her sole Objection, Boone argues that the Magistrate Judge erred when she concluded that substantial evidence supports the ALJ's determination at Step Three that Boone did not satisfy the

---

impairments. 20 C.F.R. § 404.1520(e) and 416.930(e).  At the fourth step, if the claimant's impairment or combination of impairments does not prevent her from doing her past relevant work, the claimant is not disabled. 20 C.F.R. §§ 404.1520(e)-(f) and 416.920(e)-(f).  For the fifth and final step, even if the claimant's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that the claimant can perform, the claimant is not disabled. 20 C.F.R. §§ 404.1520(g), 404.1560(c), and 416.920(g). *See Abbot*, 905 F.2d at 923.

criteria of Listing 11.09. (Doc. No. 14 at pp. 2-3.) Specifically, Boone maintains that both the Magistrate Judge and the ALJ erred when they determined that Boone failed to demonstrate disorganization of motor function in two extremities as well as an inability to maintain balance in a standing position. (*Id*.) Boone argues that the Magistrate Judge failed to recognize that, in addition to using a cane, Boone requires the assistance of another person in order to maintain her balance while standing. (*Id*.) Boone further argues that the Magistrate Judge erred in concluding that the ALJ's cursory Step Three analysis provided a sufficient analysis of the requirements of Listing 11.09. (*Id*.) The Commissioner disagrees, arguing that the ALJ properly considered all the medical evidence to conclude that the requirements of Listing 11.09 were not met. (Doc. No. 15.)

At the third step in the disability evaluation process, a claimant will be found disabled if her impairment meets or equals one of the Listing of Impairments. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii); *Turner v. Comm'r of Soc. Sec.*, 381 Fed. Appx. 488, 491 (6th Cir. 2010). The Listing of Impairments, located at Appendix 1 to Subpart P of the regulations, describes impairments the Social Security Administration considers to be "severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience." 20 C.F.R. §§ 404.1525(a), 416.925(a). Essentially, a claimant who meets the requirements of a Listed Impairment, as well as the durational requirement, will be deemed conclusively disabled and entitled to benefits.

Each listing specifies "the objective medical and other findings needed to satisfy the criteria of that listing." 20 C.F.R. §§ 404.1525(c)(3), 416.925(c)(3). It is the claimant's burden to bring forth evidence to establish that her impairments meet or are medically equivalent to a listed impairment. *See e.g., Lett v. Colvin*, 2015 WL 853425 at * 15 (N.D. Ohio Feb. 26, 2015). A claimant must satisfy all of the criteria to "meet" the listing. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir.

8

2009).  *See also Foster v. Halter*, 279 F.3d 348, 354-355 (6th Cir. 2001); *Smith-Johnson v. Comm'r of Soc. Sec.*, 579 Fed. Appx. 426, 432 (6th Cir. 2014).  "An impairment that manifests only some of those criteria, no matter how severely, does not qualify."  *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990).  A claimant is also disabled if her impairment is the medical equivalent of a listing, 20 C.F.R. §§ 404.1525(c)(5), 416.925(c)(5), which means it is "at least equal in severity and duration to the criteria of any listed impairment." 20 C.F.R. §§ 404.1526(a), 416.926(a).

Where the record raises a "substantial question" as to whether a claimant could qualify as disabled under a listing, an ALJ must compare the medical evidence with the requirements for listed impairments in considering whether the condition is equivalent in severity to the medical findings for any Listed Impairment.  *See Reynolds v. Comm'r of Soc. Sec.*, 424 Fed. Appx. 411, 414-15 (6th Cir. 2011); *Brauninger v. Comm'r of Soc. Sec.*, 2019 WL 2246791 at * 5 (6th Cir. Feb. 25, 2019).  In order to conduct a meaningful review, the ALJ must make sufficiently clear the reasons for his decision.  *Id*. at 416-17.

Here, Boone's Objection is limited to the ALJ's finding that she failed to satisfy the requirements of Listing 11.09A[4] for Multiple Sclerosis. [5]  That Listing sets forth the following criteria:

---

[4] A claimant may also satisfy Listing 11.09 by meeting the criteria for Listing 11.09B, which requires a demonstration of: "Marked limitation (see 11.00G2) in physical functioning (see 11.00G3a), and in one of the following: 1. Understanding, remembering, or applying information (see 11.00G3b(i)); or 2. Interacting with others (see 11.00G3b(ii)); or 3. Concentrating, persisting, or maintaining pace (see 11.00G3b(iii)); or 4. Adapting or managing oneself (see 11.00G3b(iv))." 20 C.F.R. Part 404, Subpt. P, App. 1, § 11.09B.  Boone does not argue that the ALJ erred in finding that she does not meet the criteria of Listing 11.09B.

[5] As explained in Section 11.00N1: "Multiple sclerosis (MS) is a chronic, inflammatory, degenerative disorder that damages the myelin sheath surrounding the nerve fibers in the brain and spinal cord. The damage disrupts the normal transmission of nerve impulses within the brain and between the brain and other parts of the body, causing impairment in muscle coordination, strength, balance, sensation, and vision. There are several forms of MS, ranging from mildly to highly aggressive. Milder forms generally involve acute attacks (exacerbations) with partial or complete recovery from

9

A. Disorganization of motor function in two extremities (see 11.00D1), resulting in an extreme limitation (see 11.00D2) in the ability to stand up from a seated position, balance while standing or walking, or use the upper extremities.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 11.09A.  Sections 11.00D1 and 11.00D2 define the terms

"disorganization of motor function" and "extreme limitation," as follows:

1. Disorganization of motor function means interference, due to your neurological disorder, with movement of two extremities; i.e., the lower extremities, or upper extremities (including fingers, wrists, hands, arms, and shoulders). By two extremities we mean both lower extremities, or both upper extremities, or one upper extremity and one lower extremity. All listings in this body system [with exceptions not pertinent here] include criteria for disorganization of motor function that results in an extreme limitation in your ability to:

    a. Stand up from a seated position; or

    b. Balance while standing or walking; or

    c. Use the upper extremities (including fingers, wrists, hands, arms, and shoulders).

2. Extreme limitation means the inability to stand up from a seated position, maintain balance in a standing position and while walking, or use your upper extremities to independently initiate, sustain, and complete work-related activities. The assessment of motor function depends on the degree of interference with standing up; balancing while standing or walking; or using the upper extremities (including fingers, hands, arms, and shoulders).

    a. Inability to stand up from a seated position means that once seated you are unable to stand and maintain an upright position **without the assistance of another person or the use of an assistive device, such as a walker, two crutches, or two canes.**

    b. Inability to maintain balance in a standing position means that you are unable to maintain an upright position while standing or walking **without the assistance of another person or an assistive device, such as a walker, two crutches, or two canes.**

---

signs and symptoms (remissions). Aggressive forms generally exhibit a steady progression of signs and symptoms with few or no remissions. The effects of all forms vary from person to person." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 11.00N1.

> c. Inability to use your upper extremities means that you have a loss of function of both upper extremities (including fingers, wrists, hands, arms, and shoulders) that very seriously limits your ability to independently initiate, sustain, and complete work-related activities involving fine and gross motor movements. Inability to perform fine and gross motor movements could include not being able to pinch, manipulate, and use your fingers; or not being able to use your hands, arms, and shoulders to perform gross motor movements, such as handling, gripping, grasping, holding, turning, and reaching; or not being able to engage in exertional movements such a lifting, carrying, pushing, and pulling.

20 C.F.R. Pt. 404, Subpt. P, App. 1, §§ 11.00D1, 11.00D2 (emphasis added).

> Here, at Step Three, the ALJ addressed Listing 11.09 as follows:

> The undersigned considered the claimant's multiple sclerosis under listing 11.09 and finds that it does not meet or medically equal a listing. As discussed in more detail below, the evidence does not support evidence of disorganization of motor function in two extremities resulting in an extreme limitation in the ability to stand up from a seated position, balance while standing or walking, or use the upper extremities. Further, the evidence does not support findings of a marked limitation in physical functioning and in one of the following: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; or, with adapting or managing herself.

(Tr. 20.)  The ALJ then proceeded, at Step Four, to discuss the hearing testimony and medical evidence regarding Boone's MS in more detail.  (Tr. 21-23.)  Specifically, the ALJ acknowledged Boone's hearing testimony that she needed a cane, was having a lot of vertigo, had numbness in her extremities, and experienced "a 'fog' due to her multiple sclerosis, during which times she experienced confusion and difficulty concentrating."  (Tr. 21.)  The ALJ also noted Boone's testimony that "the cane helped with episodes of foot drop and dizziness."  (*Id*.)

The ALJ then discussed the medical evidence regarding Boone's MS, including her diagnosis in 2009, her flare ups in 2015 and 2019, and her symptoms of fatigue, right-sided lower extremity weakness, recent falls, and widespread electrical shocks and burning sensations.  (Tr. 22.)  The ALJ noted Dr. Mahajan's findings that Boone walked with a cane but that she was able to maintain a

11

Romberg's position with mild difficulty and had normal muscle tone and muscle mass with no involuntary movements.  (*Id.*)  The ALJ discussed the findings from Boone's November 2019 brain MRI, as well as Dr. Mahajan's January 2020 and August 2020 treatment notes. (*Id.*)  The ALJ acknowledged that Boone used a cane and had experienced falls in November 2019 and June 2020. (*Id.*)  The ALJ also noted, however, that Dr. Mahajan's examination findings included clear speech, intact speech comprehension, clear vision, no facial weakness, normal swallowing, and well-maintained strength. (*Id.*)  Based on the above, the ALJ concluded as follows:

> Therefore, the evidence supports that the claimant experienced limiting signs and symptoms associated with her severe impairment. She has a history of a diagnosis with MS, with brain imaging that showed a focal area of abnormal FLAIR and T2 FLAIR hyperintense signal left frontal lobes white matter likely reflective of a focal area of MS/white matter demyelinating disease, as well as two small foci of T2 shine through in the right and left cerebellum consistent with small bilateral remote cerebellar lacunar infarctions (1F/2-3, 2F/2-3, 3F/62-64). She reported symptoms that included fatigue, right-sided weakness, falls, widespread electrical shocks and burning sensations (4F/4-8, 12F/2-6). Associated clinical findings included ambulating with a cane, mild weakness of the right lower extremity, decreased sensation in the right lower extremity, mild difficulty with a Romberg's position, and foot drop (4F/4-8, 4F/9-12, 9F/2-4, 12F/2-6, 12F/7-10).
>
> However, the claimant's statements about the intensity, persistence, and limiting effects of her symptoms are inconsistent because the level of limitation alleged is not altogether consistent with the objective finding. Her brain imaging showed no enhancement or restricted diffusion to suggest active demyelization (1F/2-3, 2F/2-3, 3F/62-64). She exhibited intact speech comprehension and expression, normal muscle tone, and no fasciculations or involuntary movements (4F/4-8, 4F/9-12, 9F/2-4, 12F/2-6, 12F/7-10). Further, the evidence reflects findings of normal sensation in all areas other than her right lower extremity, intact and symmetric deep tendon reflexes, clear vision with no diplopia, normal swallowing, no facial weakness, well-maintained strength, and normal coordination (4F/4-8, 4F/9-12, 5F/11-14, 9F/2-4, 12F/2-6, 12F/7-10).

(Tr. 22-23.)  In light of the above, and reading the ALJ's decision as a whole, the Magistrate Judge concluded that the ALJ properly found that Boone had failed to establish that her MS satisfied all the requirements of Listing 11.09A.  (Doc. No. 13 at pp. 29-30.)

Boone argues that the Magistrate Judge erred in reaching this conclusion. She maintains that the Commissioner "conceded the fact that the ALJ found that Plaintiff required a cane for standing, walking, and balancing" and "agreed that Plaintiff was unable to maintain balance in a standing position." (Doc. No. 14 at p. 2.) Boone asserts that "[a]ccording to the R&R, a person must need the assistance of two canes to satisfy the criteria of Listing 11.00D2, but the Listing actually requires the assistance of another person or the use of an assistive device." (*Id*.) She maintains that she "established that she required assistance in order to maintain balance in a standing position" and, therefore, the Magistrate Judge erred when she concluded that substantial evidence supported the ALJs' finding that Boone did not satisfy the criteria of Listing 11.09. (*Id*.)

Boone's argument is without merit. Although the ALJ found that Boone used a cane (singular), it is clear that use of a single cane, standing alone, is not sufficient to demonstrate disorganization of motor function in two extremities, resulting in an extreme limitation in either the ability to stand up from a seated position or the ability to balance while standing or walking, for purposes of Listing 11.09A. *See, e.g., Weir v. Comm'r of Soc. Sec.*, 2022 WL 3219518 at * 16 (N.D. Ohio July 6, 2022) (finding that "Ms. Weir's use of a single cane cannot support a finding of 'extreme limitation' in balance while standing or walking," for purposes of Listing 11.09A), *report and recommendation adopted at*, 2022 WL 3220864 (N.D. Ohio Aug. 9, 2022). Rather, as noted *supra,* Section 11.00D2 expressly states that, in order to show extreme limitation in either of those areas, a claimant must show that she requires "the assistance of another person or the use of an assistive device, such as a walker, two crutches, or two canes." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 11.00D2. Here, Boone does not direct this Court's attention to any evidence that she required the use of a walker, two crutches, or two canes. Nor does she direct this Court's attention to any evidence that

13

she required "the assistance of another person" to stand up from a seated position and/or maintain balance while standing or walking.[6]  To the contrary, Boone's physical examinations found that she had normal muscle tone and mass, as well as well-maintained strength, power, and coordination.  (Tr. 382, 608.)  Thus, the Court finds that Boone has failed to demonstrate that the ALJ erred in concluding that she did not satisfy the requirements of Listing 11.09A.

Boone argues that remand is nevertheless required because the ALJ's Step Three analysis merely recited the requirements of Listing 11.09 and failed to evaluate the medical evidence, compare that evidence to the requirements of the Listing, and provide an explained conclusion.  (Doc. No. 14 at p 2-3.)  The Court disagrees.

Although the ALJ's analysis at Step Three is cursory, the ALJ specifically references his later discussion of the medical evidence to support his finding that Boone's MS does not meet or medically equal the requirements of Listing 11.09.  *See* Tr. 20 ("**As discussed in more detail below**, the evidence does not support evidence of disorganization of motor function in two extremities resulting in an extreme limitation to stand up from a seated position, balance while standing walking, or use the upper extremities.") (emphasis added).  At Step Four, the ALJ discussed the medical evidence regarding Boone's MS at length, including the results of her brain MRI and Dr. Decaro's and Dr. Mahajan's treatment notes.  (Tr. 21-23.)  Boone fails to explain how or why the ALJ's discussion of the evidence at Step Four is insufficient to support the ALJ's Step Three finding.  Nor does she cite any binding authority that the ALJ was required to repeat his analysis of the evidence at both Steps Three and Four of his decision to avoid a remand.  To the contrary, authority in this Circuit suggests

---

[6] Indeed, the Court notes that Boone does not cite to *any* medical evidence whatsoever in her Objection.

14

otherwise.  *See, e.g., Anderson v. Comm'r of Soc. Sec.*, 2022 WL 4545188 at * 2 (N.D. Ohio Sept. 29, 2022) ("It's well-established that a reviewing court conducts a holistic review of the ALJ's decision and may look to findings elsewhere in the opinion to support Step Three conclusions."); *Immke v. Saul*, 2020 WL 1940849 at *6 (N.D. Ohio April 22, 2020) ("The Court may look to findings elsewhere in the ALJ's decision to support his Step Three conclusions"); *Bukowski v. Comm'r of Soc. Sec.*, 2014 WL 4823861 at *3 (E.D. Mich. Sept.26, 2014) ("That the ALJ performed some of [the Step Three] analysis in a different section of his opinion does not render his Step–Three findings inadequate.") (citing *Bledsoe v. Barnhart*, 165 Fed. Appx 408, 411 (6th Cir.2006) (holding Step Three finding sufficient where the ALJ described evidence regarding impairments earlier in the opinion, "even though he did not spell out every fact a second time under the step three analysis")); *Wright ex rel. A.B.W. v. Comm'r of Soc. Sec.*, 2013 WL 3879802 at *8 (E.D. Mich. July 26, 2013) (holding a Step Three finding supported by substantial evidence where the ALJ reviewed supporting medical evidence "in the pages both preceding and following [the Step Three] conclusion") (citing *Bledsoe*, 165 Fed. Appx. at 411).

Accordingly, and for all the reasons set forth above, the Court finds that substantial evidence supports the ALJ's conclusion at Step Three that Boone's MS did not meet or medically equal the requirements of Listing 11.09A.   Boone's Objection is without merit and rejected.

## V.    Conclusion

For all of the foregoing reasons, Plaintiff's Objection (Doc. No. 14) is OVERRULED.  The Court ACCEPTS the Magistrate Judge's Report and Recommendation (Doc. No. 13), and the Commissioner's decision is AFFIRMED.

**IT IS SO ORDERED.**

                                                    *s/Pamela A. Barker*
                                                   _____
                                                   PAMELA A. BARKER
Date:  February 22, 2023                           U. S. DISTRICT JUDGE